**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **MICHAEL AARON M.,[1]**<br>**Plaintiff,**<br>**v.**<br><br>**ANDREW M. SAUL, Commissioner of Social Security,**<br>**Defendant.** | ) | **NO. CV 19-9361-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

Michael Aaron M. ("Plaintiff") filed a Complaint on October 31, 2019, seeking review of the denial of his application for Disability Insurance benefits ("DIB") (the "Complaint"). (Dkt. No. 1.) On January 31, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 14-16.) On November 3, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 25.) Plaintiff seeks an order remanding for further proceedings. (Joint Stip. at 20.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

proceedings. (*See id*. at 20-21.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In May 2016, Plaintiff, who was born on July 8, 1977, filed an application for DIB.[2] (*See* Administrative Record ("AR") 89, 170; Joint Stip. at 2.) Plaintiff alleged disability commencing February 16, 2016 due to: back injury, diabetes, diabetic cataracts, depression, skin problems on hands, insomnia, migraines, knee pain, and diarrhea. (AR 170, 198.) Plaintiff previously worked as a cashier-checker (DOT[3] 211.462-014). (AR 38, 199.) After the Commissioner denied Plaintiff's application initially (AR 86) and on reconsideration (AR 98), Plaintiff requested a hearing (AR 115-16). Administrative Law Judge Susanne M. Cichanowicz (the "ALJ") held on a hearing on July 17, 2018. (AR 44.) Plaintiff and a vocational expert testified. (AR 48-76.) On August 22, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 18-39.) On May 17, 2019, the Appeal Council denied Plaintiff's request for review. (AR 7-12.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. (AR 23.) The ALJ next found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 16, 2016. (*Id.*) The ALJ further determined that Plaintiff had severe impairments of obesity and lumbar degenerative disease with spasm and lumbar musculoligamentous injury. (AR 24.) In reaching this conclusion, she found, as relevant here, that Plaintiff's depression and anxiety were non-severe

---

[2] Plaintiff was 37 years old on the alleged onset date and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 404.1563(c).

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

impairments because, "considered singly and in combination, [they] do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (AR 26.) The ALJ further concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 29.)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform medium work as defined in 20 C.F.R. § 404.1567(c) and the following limitations: lifting, carrying, pushing, and pulling up to 50 pounds occasionally and 25 pounds frequently; standing or walking for about six hours out of an eight-hour workday; sitting for about six hours out of an eight-hour workday; and frequently climbing ramps or stairs, occasionally climbing ladders, ropes, or scaffolds, and frequently balancing, stooping, kneeling, crouching and crawling." (AR 30.) The ALJ found that Plaintiff was able to perform his past relevant work as a cashier-checker, which did not require the performance of work-related activities precluded by Plaintiff's RFC. (AR 38.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 39.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they

are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

Plaintiff presents the Court with one issue for consideration: whether the ALJ erred in failing to find that Plaintiff's mental impairments were "severe." (Joint Stip. at 3.) For the reasons discussed below, the Court concludes that the ALJ did not err in finding Plaintiff's mental impairments non-severe. Accordingly, the ALJ's decision must be affirmed.

//

**I. Applicable Law**

At step two of the sequential analysis, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities" and lasted, or is expected to last, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1522, 404.1520(a)(4)(ii) (you are not disabled if you do not have a severe medically determinable physical or mental impairment, or combination of impairments, that meets the 12-month duration requirement in 20 C.F.R. § 404.1509). "Basic work activities" means the "abilities and aptitudes necessary to do most jobs, including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1522.

"An impairment or combination of impairments may be found not severe *only if* the evidence establishes a *slight* abnormality that has no more than a *minimal* effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

//

//

## II. Background

In June 2016, Plaintiff completed a Function Report in which he reported, as relevant here, the symptoms he experienced as a result of his mental impairment. (AR 205-13.) He described that his daily activities consisted of having breakfast, brushing his teeth, eating dinner, playing video games, and going to bed. (AR 206.) He did not care for any other people or animals, he did not need reminders to take care of personal needs and grooming, but he did need reminders to take medicine. (AR 206-07.) He did not prepare his own meals or do household chores. (AR 207-08.) He could drive, shop in stores, and manage his finances. (AR 208.) His hobbies included playing video games and watching television. (AR 209.) He did not report that his condition impact any of his mental faculties. (AR 210.) He stated that he could pay attention, occasionally finish what he started, and followed instructions "well enough to get by." (*Id.*) He got along "ok" with authority figures and had never been fired or laid off from a job because of interpersonal problems. (AR 211.) He stated that he handled stress and changes in routine "not well." (*Id.*)

The record contains the following evidence concerning Plaintiff's alleged mental impairment. In June 2016, Ernest A. Bagner III, M.D., a board eligible psychiatrist, completed a complete psychiatric evaluation of Plaintiff. (AR 349-53.) Plaintiff reported to Dr. Bagner that he experienced depression, nervousness, helplessness, hopelessness, and low motivation; and had problems with concentration and memory. (AR 349.) He denied suicidal or homicidal ideation, and had no prior psychiatric treatment, hospitalizations, or mental health records for Dr. Bagner's review. (AR 350.) Plaintiff reported that his daily activities consisted of brushing his teeth, eating, playing computer games, watching television, and going to bed; he could dress and bathe independently, and could handle his own finances. (AR 351.) He had a fair relationship with his family and poor relationships with friends. (*Id.*) Dr. Bagner's mental status examination ("MSE") revealed the following findings: tense and cooperative attitude; poor eye contact; clear and coherent speech; depressed mood and appropriate affect;

normal thought processes; no delusions or hallucinations; orientation to time, place, person, and purpose; ability to recall 3 out of 3 objects immediately, and 1 out of 3 objects in 5 minutes; ability to recall what he had for breakfast and his birthday; normal fund of information and intelligence; and normal insight and judgment. (AR 351-52.) Dr. Bagner diagnosed Plaintiff with major depressive disorder with anxiety, and made the following functional assessment: Plaintiff was mildly limited in his ability to follow simple oral and written instructions, to comply with job rules such as safety and attendance, to respond to changes in routine work setting, and in his daily activities; and he was moderately limited in his abilities to follow detailed instruction, to interact appropriately with the public, coworkers and supervisors, and to respond to work pressure in a usual work setting. (AR 352-53.) Dr. Bagner's prognosis was fair with consistent treatment. (AR 353.)

In August 2016, Plaintiff's condition was evaluated by a State Disability Determination Service ("DDS") psychological consultant J. McWilliams, Ph.D. in connection with Plaintiff's initial disability determination. Dr. McWilliams found that Plaintiff had medically determinable impairments in the form of affective disorders. (AR 82.) He had no restriction in activities of daily living and no repeated episodes of decompensation, and mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (*Id.*) Dr. McWilliams observed that Plaintiff had complained to Dr. Bagner of depression, nervousness, helplessness, and low motivation, but he had not received psychological treatment or medication. (*Id.*) He further noted that Dr. Bagner's MSE revealed mostly normal findings and he diagnosed Plaintiff with anxiety. (*Id.*) Dr. McWilliams found Plaintiff's mental impairment not severe and gave Dr. Bagner's opinion about Plaintiff's ability to follow detailed instructions and engage in social interaction little weight "as they are consistent with MSE." (*Id.*) In October 2016, Plaintiff's condition was evaluated by DDS consultant Clare McGinness in connection with his disability decision on reconsideration. (AR 93-94.) McGinness made identical findings to Dr. McWilliams. (*See id.*) She noted that the record did not indicate that Plaintiff had sought treatment for mental health issues. (AR

94.) Moreover, Dr. Bagner's opinion revealed only mild findings that were not suggestive of a disabling impairment. (*Id.*)

In 2016, Plaintiff began receiving treatment from Orange County Behavioral Health Services ("BHS") for his mental health issues. (AR 584-87 (listing dates of service at BHS).) In November 2016, Plaintiff reported symptoms of depression, including intermittent passive suicidal ideation. (AR 497-98.) He had no hospitalizations of treatment for psychiatric issues. (AR 497-98, 512.) He reported at his psychosocial evaluation that he constantly worried about finances and his health; experienced depression, anxiety, and anger; had trouble sleeping; and did not want to do anything when he was depressed. (AR 507-08, 512.) A MSE revealed largely normal findings in all areas of mental functioning—Plaintiff was cooperative and oriented; his mood was euthymic; his thought processes were normal; he had good impulse control; and he lacked delusions, hallucinations, or preoccupations. (AR 498.) Findings from his November 2016 psychosocial evaluation also showed largely normal findings, apart from depressive preoccupations and impaired concentration and memory. (AR 510.) Plaintiff reported in December 2016 that due to his depressed mood, anger, anxiety, worry, and isolation, he could not socialize with people outside of his family and wanted to sleep all day. (AR 503.) At this point, he was diagnosed for the first time with major depressive disorder, recurrent, moderate. (AR 586.) However, a note from his December 2016 examination stated that he could figure out how to do things mostly without explanation, he attended appointments, and was focused on the future. (AR 494.)

Plaintiff's MSEs over the ensuing months reveal largely normal and consistent findings. In February 2017, Plaintiff reported that he spent his days playing video games and watching television. (AR 575.) His MSEs from February, March, and May 2017 consistently reveal normal findings, including euthymic mood; appropriate affect; cooperative and responsive attitude; normal thought processes; mood congruent; no delusions, hallucinations, or preoccupations; fair orientation, insight, and judgment; and some suicidal ideation, but no

thoughts of self-harm. (AR 569-70, 572-74, 576; *see also* AR 533 (May 2017 assessment).) Plaintiff was prescribed Cymbalta, an anti-depressant, and reported improvement after taking the medication. (AR 570.) In June 2016, he reported stable mood, denied extended periods of depression of anxiety, reported intermittent thoughts of not wanting to wake up, but denied intent or plan. (AR 566.) He stated that he had been "putting up gaming videos" on YouTube for the past year, which had been "fun," and he was "working towards increasing his subscribers." (*Id.*) His MSE produced normal results with unremarkable findings, and his medication was continued. (AR 566-67.)

In July 2017, Plaintiff reported that he was feeling "alright" and had a stable mood; he stated that he recently attended an Anime Expo, saved money to attend the event, and was able to be at the event over a three-day period. (AR 529, 563.) Although he continued to have intermittent passive suicidal thoughts, he had no active intent or plan for self-harm. (AR 563.) In August 2017, Plaintiff reported that he spent the vast majority of the day watching YouTube or playing video games. (AR 528.) However, he also reported that his mood was stable with intermittent periods of low mood; and a MSE revealed normal findings, largely consistent with the findings from earlier months. (AR 558-59.) Plaintiff reported that he did not experience suicidal ideation. (AR 559.) In October 2017, Plaintiff failed to show up to his scheduled appointment and the provider was unable to reach Plaintiff. (AR 525.)

In December 2017, Plaintiff reported that he had a stable mood and was doing well overall, with intermittent low mood periods related to psychosocial stressors. (AR 555.) In early April 2018, he stated that his mood and energy levels were stable, but that his anxiety had increased due to external factors and pain related to his physical impairments. (AR 550-51.) Nonetheless, at both examinations, Plaintiff had largely normal MSE findings, which were generally consistent with the findings from earlier months. (AR 551, 555.) At a late April 2018 appointment, Plaintiff reported that when he felt depressed, he did not play video games, but was able to distract himself from his depression and anxiety by watching television.

(AR 506.) His MSE revealed normal examination findings, consistent with earlier findings. (AR 506-07.) In May 2018, although Plaintiff reported that his depressed mood and difficulty sleeping made it difficult to focus on tasks (AR 488), his MSE again revealed normal MSE findings, with normal speech and activities; cooperative attitude; euthymic mood; normal thought processes; and no suicidal or homicidal ideation, delusions, hallucinations, or preoccupations. (AR 533-34.)

In October 2018, Brian Choi, M.D., Plaintiff's psychiatrist, completed a Mental Medical Source Statement. (AR 476-81.) He observed that Plaintiff had major depressive disorder, recurrent, moderate; and anxiety disorder, unspecified. (AR 476.) Plaintiff had a "fair" response to treatment. (*Id.*) He opined that Plaintiff's depression and low energy resulted in Plaintiff having a difficult time following through with tasks in a timely manner. (*Id.*) He identified Plaintiff as having symptoms, including, but not limited to, pervasive loss of interest, decreased energy, feelings of guilt and worthlessness, impulse control impairment, difficulty thinking or concentrating, persistent disturbances of mood or affect, emotional withdrawal or isolation, intense and unstable interpersonal relationships, and sleep disturbance. (AR 477.) Dr. Choi opined that Plaintiff had the following limitations: he was "limited but satisfactory" in his abilities to understand and remember short and simple instructions, carry out very short and simple instructions, maintain regular attendance and be punctual, ask simple questions or request assistance, be aware of actual hazards and take precautions, interact appropriately with the general public, maintain socially appropriate behavior, adhere to standards of measures and cleanliness, travel in unfamiliar places, and use public transportation; he was "seriously limited" in his abilities to remember work-like procedures, sustain an ordinary routine without supervision, work in coordination with or proximity to others without being distracted, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in work setting, deal with normal work

stress, understand and remember detailed instructions, carry out detailed instructions, set realistic goals and make plans independently of others, and deal with stress of semi-skilled and skilled work; and he was "unable to meet competitive standards" in his abilities to maintain attention for a two-hour segment, and complete a normal workday and work week without interruptions from psychological symptoms. (AR 478-79.) Dr. Choi opined that Plaintiff's depressed mood and preoccupations made it difficult for him to remember details and he required significant assistance to set goals. (*Id.*) He noted that Plaintiff was likely to be absent from work more than four days per month due to his condition. (AR 480.)

**III. ALJ's Decision**

The ALJ found that Plaintiff's depression and anxiety, although medically determinable impairments, were non-severe, considered singly and in combination, because they "d[id] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (AR 26.) "In making this finding," the ALJ explained, she "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments[,]" *i.e.* the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.*) The ALJ found that Plaintiff had only a mild limitation in each of the four areas. (*Id.*)

The ALJ found that substantial record evidence supported her finding, including the DDS consultants' opinions, which found that Plaintiff's mental condition was non-severe. (*Id.*) The ALJ gave the DDS consultants' opinions significant weight because they examined Plaintiff and reviewed his records; they were familiar with the Agency's disability guidelines; and their opinions were consistent with the medical evidence in the record as a whole, which showed normal MSE findings and little treatment. (*Id.*; *see also* AR 32.) The ALJ also found that the objective record evidence supported her finding; she summarized in great detail

Plaintiff's largely normal mental findings throughout the record, including the consultative examiners report and monthly to bi-monthly MSE findings between November 2016 and May 2018. (AR 26-28.) The ALJ also found that the record showed no evidence of extended hospitalizations, a structured environment, or an assisted care arrangement; and Plaintiff engaged in many activities of daily living, further demonstrating that he had no more than mild mental limitations. (AR 28.) Finally, in a Function Report, Plaintiff himself did not indicate that his conditions affected his memory, concentration, understanding, or abilities to complete tasks, follow instructions, or getting along with others. (AR 29 (citing AR 210).)

The ALJ added that her assessment of Plaintiff's RFC "reflects the degree of limitation . . . in the 'paragraph B' mental function analysis." (AR 29.) She found that, *inter alia*, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record because: (1) substantial record evidence, including the opinions of DDS consultants, supported the RFC and Plaintiff's ability to work; (2) Plaintiff had a history of conservative, routine treatment and many normal and mild examination findings; and (3) Plaintiff engaged in activities of daily living that were inconsistent with his subjective allegations and demonstrated his ability to work. (AR 31.) The ALJ discounted Dr. Choi's check-the-box form opinion because it was not consistent with the record evidence as a whole, which documents Plaintiff's history of conservative, routine treatment and normal and mild mental examination findings; moreover, Dr. Choi was not familiar with the Agency's precise disability guidelines. (AR 35.) The ALJ also gave little weight to the opinion of Dr. Bagner because it was not consistent with the record as a whole, and was too restrictive in light of the conservative, routine treatment of medications and monthly therapy. (AR 35-36.)

//

//

//

//

**IV. Discussion**

**A. Arguments of the Parties**

Plaintiff argues that the ALJ's finding that he did not have a severe mental impairment is not supported by substantial record evidence. Plaintiff notes that his MSEs since 2016 "show multiple positive findings including impaired concentration and memory; fair judgment; depressed mood; decreased ability to concentrate; distractibility; fatigue/Loss of Energy; fair impulse control; poor hygiene level; anger outburst; and suicidal ideation." (Joint Stip. at 7-9 (citing AR 488, 497-98, 503, 506, 508, 510, 533, 555, 558, 563, 570).) The record also reveals "clinical diagnoses, which have consistently been noted as anxiety disorder and major depressive disorder, recurrent, moderate." (*Id.* at 9 (citing AR 584-87).)

In support of his contention that his depression was severe and significantly limited his ability to perform work functions, Plaintiff points to the opinion of Dr. Choi, who found that Plaintiff was seriously limited in his abilities to make simple work-related decisions, respond appropriately to changes in a routine work setting, deal with normal work stress, respond appropriately to criticisms from supervisors, and get along with coworkers without unduly distracting them. (*Id.* at 9-10 (citing AR 478).) Plaintiff further points to the opinion of Dr. Bagner, who opined that Plaintiff had findings and limitations consistent with the severe mental impairment. (*Id.* at 10 (citing AR 352-53).) Finally, Plaintiff claims that the ALJ erred by focusing on non-findings in the record, such as normal MSE results, or misconstruing Plaintiff's daily activities. (*Id.* at 10-11.) Accordingly, he contends that he has satisfied the *de minimis* standard that his mental condition had more than a minimal effect on his ability to work. (*Id.* at 11.)

Defendant responds that Plaintiff failed to meet his burden of showing that his mental impairments limited his ability to perform basic work activities; specifically, the opinion and

objective evidence, the minimal and conservative mental health treatment Plaintiff received, and Plaintiff's daily activities support the finding of a non-severe mental impairment. (*Id.* at 12-13.) Defendant argues that the ALJ offered ample explanation to support her findings that Plaintiff suffered only mild limitation in all four areas of mental functioning. (*Id.* at 13.) And Plaintiff's argument that the findings are not supported by substantial evidence is conclusory and fails to preserve the issue for judicial review. (*Id.*) Even assuming the issue is preserved, Defendant notes that the ALJ's decision *is* supported by substantial evidence, including the DDS consultants' opinions, the normal MSE findings throughout the record, the fact that Plaintiff only ever received minimal and conservative mental health treatment. (*Id.* at 14-16.) Additionally, evidence of Plaintiff's daily activities is inconsistent with more than mild limitations in mental functioning. (*Id.* at 17-18.) Defendant also contends that the ALJ properly rejected the opinions of Drs. Choi and Bagner and so, Plaintiff's reliance on their opinions is without merit. (*Id.* at 18-19.) Finally, Plaintiff's recitation of alleged positive findings in the record is misleading because some of the relied-upon records are internally inconstant and, at times, Plaintiff merely describes his subjective complaints and attempts to transform them into objective evidence. (*Id.* at 19.)

**B. Analysis**

In the context of a claim under step two of the sequential analysis, the Court's inquiry focuses on whether the medical evidence clearly establishes that, during the relevant period, Plaintiff did not develop mental limitations that had "more than a minimal effect on" his ability to work for at least 12 continuous months. *See Webb*, 433 F.3d at 686; 20 C.F.R. § 404.1520(a)(4)(ii). The duration requirement of step two is not in dispute here—rather, the Court inquires whether the ALJ's conclusion that Plaintiff's alleged mental impairment had no more than a minimal effect of his ability to do work-related activities was "clearly established." *Webb*, 433 F.3d at 687. The Court finds that it was.

//

The record evidence clearly establishes that Plaintiff had no more than a mild limitation in any area of mental functioning. Between 2016 and 2018, despite reporting symptoms of depression and anxiety, Plaintiff's treatment notes reveal MSE findings and psychiatric evaluations by qualified examiners, which consistently showed normal and unremarkable findings, with only occasional mild limitations. (*See, e.g.*, AR 351 (June 2016 examination by Dr. Bagner showing depressed mood but otherwise unremarkable findings); AR 498-99, 506-07, 510 (November 2016); AR 533-34, 576 (February 2017); AR 539-40 (October 2016), 543 (May 2018), 547 (April 2018), 551 (January 2018), 555 (December 2017), 559 (August 2017), 566-67 (June 2017), 569-70 (May 2017), 573 (March 2017), 579-80 (December 2016).) Although Plaintiff occasionally reported suicidal ideation, his findings during the same MSEs during which he made those reports reveal that his mood was noted as being "euthymic" (*i.e.*, normal non-depressed, reasonably positive mood) (*see* AR 498-99, 566-67, 569-70, 573, 576). *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that internal inconsistencies in medical evidence are relevant). Plaintiff cites to examples of medical evidence in the record, which he alleges reflects evidence of his mental impairment. (*See* Joint Stip. at 7-9.) Many of the examples Plaintiff cites, however, are medical notes documenting Plaintiff's subjective complaints. (*See, e.g.*, AR 497, 503, 555.) But Plaintiff's subjective claims are not transformed into objective evidence simply because a physician recorded them. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (doctors recording of claimant's subjective complaints did not support finding of impairment because they were based solely on claimant's perception or description of his problems). Thus, there is no support in the objective record evidence for Plaintiff's claim that he had a severe mental impairment.

The ALJ's decision is further supported by the fact that Plaintiff received only minimal and conservative mental health treatment. *See Malloy v. Colvin*, 664 F. App'x 638, 641 (9th Cir. 2016) (rejecting claimant's assertion of severe mental impairment because evidence showed minimal and inconsistent treatment for psychological symptoms). Plaintiff reported

to Dr. Bagner hat he had never previously been hospitalized for a psychiatric condition, received outpatient treatment, or seen a psychiatrist. (AR 349-50.) The record reveals that Plaintiff began receiving mental health treatment at BHS in late 2016, but his treatment was limited to supportive therapy and medication (Cymbalta) (AR 501, 548, 552, 556, 559, 563, 567, 570, 573-74, 577, 580, 582). *See, e.g., Hesketh v. Berryhill*, 2017 WL 2256964, at *6 (D. Or. May 23, 2017) (collecting cases for proposition that use of Cymbalta is a conservative treatment measure); *cf. Mary M. v. Comm'r of Soc. Sec.*, 2020 WL 2556353, at *2 (D. Or. May 20, 2020) (stating that ALJ noted that claimant had conservative mental health treatment including medication management and supportive therapy). Plaintiff does not argue and there is no evidence in the record that he ever needed stronger medication or failed to seek more aggressive treatment. Thus, the record evidence does not support that Plaintiff's condition was more severe than interpreted by the ALJ.

Finally, it was reasonable here for the ALJ to infer from evidence of Plaintiff's daily activities that his mental impairments did not impose significant limitations. As an initial matter, Plaintiff's objection to the ALJ's reliance upon his daily activities in reaching his non-severity finding is misplaced because "an ALJ is required to consider a claimant's daily activities in analyzing the severity of a mental impairment at step two." *See Lindsay v. Berryhill*, Case No. SACV 17-1545-AFM, 2018 WL 3487167, at *4 (C.D. Cal. July 18, 2018) (citing 20 C.F.R. §§ 404.1520a(c)-(d)). Here, the ALJ properly relied on Plaintiff's daily activities. In Plaintiff's June 2016 Function Report, he stated that he did not have problems getting along with family, friends, neighbors, or others; he got along "ok" with authority figures; and he had never been fired from work because of problems getting along with others. (AR 210-11.) In June 2017, Plaintiff reported to his treating provider that he had been uploading gaming videos to YouTube for the past year, which he enjoyed, and he planned "working towards increasing his subscribers." (AR 566.) And while Plaintiff notes that early in his treatment, he experienced periods of depression and anger that impacted his daily activities (*see, e.g.*, AR 497, 506-07), those examples were infrequent and he resumed his

normal daily activities as he received treatment for his condition. To the extent Plaintiff disagrees with the ALJ's interpretation of the impact of Plaintiff's activities of daily living, that is not a basis for remand. *See Molina*, 674 F.3d at 1110.

Plaintiff's additional arguments in support of remand are equally unavailing He contends that the record reveals "clinical diagnoses, which have consistently been noted as anxiety disorder and major depressive disorder, recurrent, moderate." (Joint Stip. at 9 (citing AR 584-87).) However, the existence of an impairment does not, by itself, establish either work-related mental limitations or a presumption that an impairment is severe. *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982). Plaintiff also argues that the severe nature of his mental impairment is supported by the opinions of Drs. Choi and Bagner. (Joint Stip. at 9-10.) However, Plaintiff's argument is unpersuasive. After concluding that Plaintiff's mental impairment was not severe, she continued to consider all of Plaintiff's impairments in evaluation his disability claim, including those that were not severe. In doing so, the ALJ gave little weight to the opinions of Drs. Choi and Bagner. (AR 35-36.) Plaintiff does not challenge the ALJ's evaluation of the opinion evidence in this case, and there is no apparent basis to support such a challenge.

Finally, Plaintiff asserts that the ALJ erred by focusing on "non-findings in the record." (Joint Stip. at 10-11.) But Plaintiff's argument fails because the "non-findings" that he identifies are the multiple and consistent normal MSE findings in the record, which clearly support the ALJ's conclusion of nonseverity. Plaintiff's mere disagreement with the ALJ's reliance on objective evidence and subsequent interpretation of that evidence is not evidence of material error by the ALJ. *See Molina*, 674 F.3d at 1110.

Accordingly, the ALJ's decision must be AFFIRMED.

//

//

**CONCLUSION**

For all the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial record evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: December 2, 2020

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE